IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UWE R. TAYLOR | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-1158-O-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Plaintiff Uwe R. Taylor seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision should be affirmed.

I.

Plaintiff alleges that he is disabled due to a variety of ailments, including chronic pain in his feet, legs, and back, tarsal tunnel syndrome, peroneal nerve entrapment, and plantar fasciitis. After his application for disability benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on April 27, 2009. At the time of the hearing, plaintiff was 49 years old. He has a high school diploma and past work experience as a sales/office worker, a scale operator, and a warehouse worker. Plaintiff has not engaged in substantial gainful activity since June 7, 2007.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that plaintiff suffered from tarsal tunnel syndrome, plantar fasciitis, and low back pain of unknown origin, the judge concluded that the severity of those

impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity perform a significant range of sedentary work, but could not return to his past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a clerical worker, a small parts inspector, and a small products assembler -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In six grounds for relief, plaintiff contends that the hearing decision is not supported by substantial evidence because: (1) the ALJ improperly evaluated his credibility; (2) the finding that he can perform other work in the national economy was based on an improper hypothetical question to the vocational expert; (3) the ALJ improperly relied on the opinions of a non-examining medical expert; (4) the ALJ used the wrong legal standard in evaluating the severity of his impairments; (5) the ALJ should have classified him as a person "closely approaching advanced age;" and (6) the ALJ improperly evaluated his impairments under Listing 1.04A.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court

may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff first contends that the ALJ did not properly evaluate his subjective complaints of pain and the limiting effects of his symptoms. At the administrative hearing, plaintiff testified that he could no longer work or engage in certain activities due to chronic pain that starts in his feet and radiates up through his back. (*See* Tr. at 22-24, 33). Plaintiff stated that, because of this pain, he cannot twist, bend, stoop, climb, walk more than two blocks, lift more than 10 or 15 pounds, or sit

for more than 20 or 30 minutes at a time. (*Id.* at 25, 33). According to plaintiff, his daily activities are limited to preparing a small breakfast, reading the paper, watching television, and resting. (*Id.* at 34, 35). He performs almost no household chores and relies on his wife to care for him. (*Id.* at 34, 36). Although plaintiff takes hydrocodone and has been on other pain medications, he said that the medications do not completely alleviate his pain -- they just "put[ ] it at a level where I can function half way." (*Id.* at 28, 32). Plaintiff also testified that he is forgetful, suffers from depression, and experiences adverse side effects from his medications, including dry mouth and fatigue. (*Id.* at 28, 35-36). The ALJ rejected plaintiff's testimony as "not credible" to the extent it was inconsistent with a residual functional capacity assessment for sedentary work limited only by restrictions for no prolonged walking of more than 10 minutes in duration and the need for the low end of detailed work. (*Id.* at 14, 15-16).

The social security regulations establish a two-step process for evaluating subjective complaints of pain and other symptoms. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* SSR 96-7p, 1996 WL 374186 at *2 (Jul. 2, 1996). Where such an impairment has been proved, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine whether they limit the ability to do basic work activities. *Id.*; *see also* 20 C.F.R. § 404.1529. In addition to objective medical evidence, the ALJ should consider the following factors in assessing the claimant's credibility:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3. Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005), *citing Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001).

In his written decision, the ALJ cited to the applicable regulations, summarized the evidence, and articulated legitimate reasons for finding that plaintiff's testimony was "not credible[.]" (*See* Tr. at 14-16). In particular, the judge noted that plaintiff's medical records fail to corroborate his complaints. (*See id.* at 16). An MRI of plaintiff's lumbar spine was "normal" and "basically unremarkable." (*Id.* at 302, 332, 401). EEG test findings were "normal." (*Id.* at 367-68). Neurophysiological studies were "unremarkable," and an MRI of plaintiff's brain was "essentially normal." (*See id.* at 364-66, 369). In August 2008, Dr. Muhammad Zulqarnain, one of plaintiff's treating physicians, remarked that "[i]t appears that the patient does not have any anatomical reason of his pain[.]". (*Id.* at 325). Dr. Ollie D. Raulston Jr., an orthopedic surgeon, testified at the administrative hearing that there was no anatomic explanation for plaintiff's alleged pain. (*Id.* at 40).

No physician ever suggested that plaintiff is precluded from all work activity. Nor is there any other objective medical evidence to support plaintiff's claim that he cannot work due to pain or other limitations. To the contrary, a residual functional capacity assessment performed by a state agency physician shows that plaintiff can perform a significant range of light work. (*Id.* at 286-93). Dr. Raulston reached the same conclusion. (*Id.* at 38).[1] Thus, a fair reading of the record shows that the ALJ's credibility determination is supported by substantial evidence.

Plaintiff counters that the ALJ improperly relied on his own medical opinion in finding that "the claimant is alleging a pain pattern that is neurologically impossible since pain does not radiate up the body." (*Id.* at 15). The court disagrees. As discussed, the ALJ relied on a variety of factors, including evidence from a treating physician and a medical consultant, in rejecting plaintiff's testimony regarding the intensity, persistence, and limiting effects of his pain. The additional statement cited by plaintiff does not alter the conclusion that the ALJ's credibility determination is supported by substantial evidence. Plaintiff also argues that his treating physicians must have found his complaints credible because they continued to treat his symptoms with pain medication. (*See* Plf. MSJ Br. at 16). Although Dr. Zulqarnain did prescribe pain medication as late as August 2008, he noted that "we will be starting tapering down his pain medication and eventually stop them." (Tr. at 325). This suggests that even plaintiff's treating physician doubted the severity of his alleged symptoms. Finally, plaintiff's assertion that the ALJ failed to state any specific reasons for his credibility finding provides no basis for remand. *See, e.g. Salgado v. Astrue*, 271 Fed.Appx. 456, 2008 WL 828945 at *6 (5th Cir. Mar. 28, 2008) (upholding credibility determination by ALJ

---

[1] Although both the state agency physician and Dr. Raulston determined that plaintiff could perform light work, the ALJ concluded that plaintiff should be limited to sedentary work with some restrictions. (*See* Tr. at 16).

notwithstanding failure to address each regulatory factor); *Undheim v. Barnhart*, 214 Fed.Appx. 448, 2007 WL 178062 at *2 (5th Cir. Jan. 19, 2007) (same).

C.

Next, plaintiff contends that the ALJ posed an improper hypothetical question to Shelly Eike, a vocational expert, that failed to include all the limitations associated with his impairments. (Plf. MSJ Br. at 18-19). At the administrative hearing, the ALJ asked Eike:

> [I]f we took a hypothetical individual, then, who was the same age, education and work experience as the claimant, limited to work at the sedentary exertional level, which did not require prolonged walking over 10 minutes at a time, and was performed -- performing tasks at the low end of detailed work instructions, would there be any jobs that exist in the national economy such an individual could perform?

(Tr. at 43-44). Eike responded that such a person could work as a clerical worker, a small parts inspector, and a small products assembler. (*Id.*). Plaintiff argues that this hypothetical failed to take into account the side effects of his medication, his inability to sit for more than 20 or 30 minutes at a time, his need for frequent breaks, and his need to miss work more than two days a month. (*See* Plf. MSJ Br. at 18-19).

A hypothetical question to a vocational expert cannot provide substantial evidence supporting the denial of benefits unless: (1) the hypothetical reasonably incorporates all the disabilities of the claimant recognized by the ALJ; and (2) the claimant or his representative is afforded the opportunity to correct deficiencies in the question. *See Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Here, the hypothetical posed to the vocational expert incorporated all the limitations recognized by the ALJ. (*See* Tr. at 14). There is no medical evidence that plaintiff is limited in his ability to work due to the side effects of his medication, is unable to sit for more than 20 or 30 minutes at a time, needs frequent breaks, or needs to miss work more than two days a month. Although plaintiff testified that he is unable to work due to pain, (*see*

*id.* at 471, 473), the ALJ rejected that testimony as not credible. (*See id.* at 15-16). Plaintiff, through his attorney, was given a full and fair opportunity to cross-examine the vocational expert at the administrative hearing. (*See id.* at 45-46). Because none of the limitations suggested by counsel during his cross-examination are supported by the record, there was nothing improper about the hypothetical presented to the vocational expert. *See Bowling*, 36 F.3d at 436; *see also Wise v. Barnhart*, 101 Fed.Appx. 950, 951, 2004 WL 1372922 at *1 (5th Cir. Jun. 18, 2004) (hypothetical to vocational expert need only incorporate the disabilities recognized by ALJ).

D.

Plaintiff also contends that the ALJ improperly relied on the opinions of Dr. Raulston, a non-examining medical expert. An ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1984 (1995). In an appropriate case, a disability determination may be based on the testimony of a medical expert who neither treated nor examined the claimant. *Kindle v. Barnhart*, No. 1-03-CV-485, 2005 WL 588241 at *3 (E.D. Tex. Jan. 24, 2005). "This prerogative exists even when the medical expert's testimony conflicts with evidence from treating or consultative examining sources." *Id.*

At the administrative hearing, Dr. Raulston testified that there was no discernable medical basis for plaintiff's complaints of back and leg pain, and that he was capable of performing light work. (*See* Tr. at 38, 39-40). The ALJ relied on this testimony in determining that plaintiff's symptoms did not prevent him from performing a significant range of sedentary work. (*Id.* at 16). Not only are Dr. Raulston's opinions consistent with the record as a whole, but plaintiff has adduced no medical evidence that his impairments are disabling. Although plaintiff accuses the ALJ of disregarding the opinions of his treating physicians, (*see* Plf. MSJ Br. at 21), he fails to identify any

particular medical opinion rendered by these doctors regarding the nature or severity of his impairments. *See McClatchy v. Barnhart*, No. ASA-03-CA-0914-X, 2004 WL 2810100 at *6 (W.D. Tex. Dec. 3, 2004), *rec. adopted*, 2005 WL 1593395 (W.D. Tex. Jun. 30, 2005), *citing Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("[T]he diagnosis of an impairment -- without more -- is not sufficient to establish a severe impairment or a disability.").

Nor was the ALJ required to recontact any of plaintiff's treating physicians to clarify the record regarding his alleged inability to work. Under the social security regulations, an ALJ is required to recontact a medical source only "[w]hen the evidence . . . from [the] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the claimant is] disabled." *Cornett v. Astrue*, 261 Fed.Appx. 644, 648, 2008 WL 58822 at *3 (5th Cir. Jan. 3, 2008), *quoting* 20 C.F.R. § 416.912(e). In this case, there is no indication that the ALJ found the evidence inconclusive or inadequate to render a decision, or that plaintiff's treating physicians could have provided any additional information that would have been helpful to him. Without such evidence, there is no basis for a remand. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (remand required only if claimant shows prejudice resulting from ALJ's failure to request additional information); *Hector v. Barnhart*, 337 F.Supp.2d 905, 926–27 (S.D. Tex. 2004) (same).

E.

Plaintiff alleges that the ALJ failed to apply the correct legal standard for determining the severity of his depression. The applicable social security regulation provides:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. § 404.1520(c). Notwithstanding the plain language of this regulation, the Fifth Circuit has held that a literal application of section 404.1520(c) would exclude far more claimants than the

statute intended. *See Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000), *citing Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). As a result, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101, *quoting Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). Where, as here, the ALJ does not set forth the correct standard by reference to *Stone* or by an express statement recognizing the proper construction of the regulation, the court must presume that an incorrect standard was used to evaluate the severity of plaintiff's impairments. *Loza*, 219 F.3d at 393; *Stone*, 752 F.2d at 1106; *Eisenbach v. Apfel*, No. 7-99-CV-186-BC, 2001 WL 1041806 at *6 (N.D. Tex. Aug. 29, 2001). However, the Commissioner may rebut this presumption by showing that the ALJ applied the correct legal standard. *Cook v. Astrue*, No. 3-09-CV-1589-BD, 2010 WL 4628732 at *3 (N.D. Tex. Nov. 15, 2010) (although ALJ did not specifically refer to *Stone*, remand was not required because careful analysis of the record showed that ALJ applied the correct legal standard); *Vaughn v. Astrue*, No. 3-08-CV-1920-L, 2009 WL 3874607 at *5 (N.D. Tex. Nov. 17, 2009) (same).

The hearing decision in this case does not mention *Stone* or otherwise acknowledge the proper construction of section 404.1520(c). However, it is apparent that the ALJ properly analyzed plaintiff's alleged mental health issues at Step 2 of the sequential evaluation process. Specifically, the judge noted in his decision that plaintiff testified about problems with his memory and that he has to be reminded of things, including taking his medication. (Tr. at 16; *see also id.* at 35-36). The ALJ also mentioned that plaintiff underwent a comprehensive psychological evaluation in August 2008. (*Id.* at 16). According to Dr. David Cobbs, plaintiff's psychological profile was "mildly abnormal" in only two respects:

> First, a limited number of "soft signs" are present to suggest mild dysfunction in anterior portions of the right side of the brain. This was demonstrated by the patient's impaired performance on memory tasks assessing non-language content, as well as a slightly less efficient performance on nonverbal portions of the formal intellectual assessment. The degree of impairment in this regard should be considered as quite mild, and is likely better described as *dysfunction* rather than impairment, per se.
>
> Second, the test results reflect a pattern of mild, diffuse inefficiency of processing. This includes mild slowing of information processing, as well as mild deficits for managing cognitive complexity. This is likely attributable primarily to non-neurological factors, specifically attributable to the patient's severe ongoing chronic pain syndrome. Otherwise, the majority of neuropsychological evaluation results describe essentially intact abilities. Clear evidence of a well-defined pattern of neurological abnormality is absent from these test results.

(*Id.* at 315-16) (emphasis in original). The results of this psychological evaluation are entirely consistent with the ALJ's conclusion that plaintiff's mental impairment is not severe. *See Stone*, 752 F.2d at 1101 ("[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]").[2]

F.

Plaintiff also criticizes the ALJ for mechanically applying the age categories set out in the Medical-Vocational Guidelines. Under the guidelines, a person under 50 years of age is considered to be a "younger individual." *See* 20 C.F.R. § 416.963(c). A person between the ages of 50 and 54 is considered to be "closely approaching advanced age." *Id.* § 416.963(d). Plaintiff, who was 49 years old at the time of the administrative hearing, believes that the ALJ should have classified him

---

[2] The court recognizes that plaintiff's MMPI-2 profile suggests that he has experienced a "considerable amount of emotional turmoil and distress," which Dr. Cobbs characterized as "somewhat alarming[.]" (*See* Tr. at 320-21). However, there is absolutely no evidence that plaintiff cannot work as a result of his emotional distress. Rather, Dr. Cobbs stated that plaintiff could be treated with medication and therapy as part of a comprehensive pain management program. (*See* Tr. at 321).

as a person "closing approaching advanced age," rather than a "younger individual," because of his borderline age. Because "borderline" is not specifically defined by either statute or regulation, the Commissioner has significant discretion to determine when a situation is borderline. *See Stanridge-Salazar v. Massanari*, 254 F.3d 70 (Table), 2001 WL 502506 at *1 (5th Cir. Apr. 24, 2001) (citing cases). Other than arguing that he was 49 years old at the time of the administrative hearing and 50 years old when the Appeals Council affirmed the hearing decision, plaintiff offers no reason why the ALJ should not have followed the Medical-Vocational Guidelines as written. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (affirming ALJ decision to classify plaintiff, who was almost 50 years old, as a "younger individual" absent evidence that he should be considered in another age category).

G.

Finally, plaintiff argues that the ALJ improperly evaluated his impairments under Listing 1.04A.[3] A claimant who has an impairment or combination of impairments that meets or medically equals a listing set forth in the social security regulations is disabled without consideration of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). At the administrative level, the burden is on the claimant to provide and identify medical signs and laboratory findings that support a

---

[3] Listing 1.04A provides, in relevant part:

> Disorders of the spine (*e.g.* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> * * * *
>
> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R., Part 404, Subpt. P, App. 1, § 1.04A.

determination that his condition satisfies *all* the criteria of a particular Listing. *See McCuller v. Barnhart*, 72 Fed.Appx. 155, 158, 2003 WL 21954208 at *3 (5th Cir. Aug. 15, 2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Here, plaintiff argues only that his "impairments appear to meet most of the requirements set out in Listing 1.04A." (Plf. MSJ Br. at 25). Nowhere does plaintiff identify any medical evidence demonstrating that his alleged impairments satisfy all the criteria of the Listing. Without such evidence, plaintiff cannot meet his burden of proof at Step 3 of the sequential evaluation analysis. *See Dell-Wilkerson v. Astrue*, No. 1-08-CV-0130-C, 2010 WL 931884 at *5-6 (N.D. Tex. Mar. 12, 2010) (remand not required where plaintiff failed to identify medical signs and laboratory findings to support all criteria of a listed impairment).

## RECOMMENDATION

The hearing decision should be affirmed in all respects.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 27, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE